UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ROBERT C. JAMES, SR.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-1469 |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM & ORDER

Pending before the Court are Plaintiff Robert C. James's ("James") Motion for Summary Judgment (Dkt. #11), and Jo Anne B. Barnhart, Commissioner of the Social Security Administration's ("Commissioner"), Motion for Summary Judgment (Docket #9). After consideration of the motions, the entire record, and the applicable law, the Court is of the opinion that James's motion for summary judgment should be DENIED, and the Commissioner's motion should be GRANTED.

### Factual and Procedural Background

The Plaintiff, James, filed this action pursuant to 42 U.S.C. § 405(g) and for judicial review of an unfavorable decision by the Commissioner regarding his claim for disability insurance benefits under Title II of the Social Security Act ("the Act").

James was born on November 6, 1944, and was 55 years old on the day of his hearing before the Administrative Law Judge ("ALJ"). He has a high school education, and one semester of college credit. James claims that he has been unable to work since January 1, 1989. He met earnings requirements for social security benefits through September 30, 1994. Prior to the onset date of his alleged disability, James was employed as a home restoration/maintenance worker, a delivery man,

and a salesman.

James filed an application for disability benefits payments on December 18, 1998, alleging an inability to work beginning January 1, 1989, due to Wolff-Parkinson-White syndrome ("WPW"), diabetes mellitus, coronary artery disease, and hip and knee problems. After his application was denied at the consideration and reconsideration levels, James requested a hearing, which was held in Houston, Texas, on February 11, 2000, before ALJ Linda D. Carter. At the hearing, James testified and was represented by counsel. Because James brought inadequate medical records, the hearing was postponed. A second hearing was held in Houston, Texas, on May 24, 2000, before ALJ Rae M. Chamberlain. At this hearing, James was represented by the same counsel. James testified at the hearing, as did medical expert Dr. Steven Goldstein, vocational expert Richard J. Ruppert, and James's wife, Janet James.

At the hearing, James described the activity involved in each of his past employment positions, as well as the time employed at each job. James explained that he had to stop working because he had knee and hip problems, recurrent WPW episodes, and uncontrolled diabetes. James stated that after he had an ablation procedure for WPW in 1995, he had no more WPW symptoms. James also testified his diabetes became worse and he went on insulin, but he has insulin-resistant diabetes. In addition to the three major problems, he also testified he had short-term memory problems during the relevant period before 1994. James stated that in 1999, he had his first heart attack, and has since had a total of three heart attacks and one bypass surgery. He also stated that during the relevant period, he was not seeing a psychiatrist.

Janet James then testified regarding her husband's medical problems. She added that he had an angioplasty in 1989, that his blood sugar levels used to be as high as 500, and that he would have missed several days of work per month. Mrs. James claims much of James's medical history is

2

undocumented because they had no insurance at the time and she tended to him, as she is a nurse.

After reviewing the file and listening to the testimony, Dr. Goldstein, the medical expert, testified regarding James's medical condition during the relevant period on or before September 1994, and since that time. Goldstein stated that, in reviewing the record regarding James's WPW, James did have WPW on or before 1994, but the ablation procedure in 1995 alleviated James's symptoms. Prior to 1994, Goldstein noted there was only one episode of palpitations. Goldstein opined that because James did not have multiple episodes of syncope, his WPW does not meet or equal the relevant listing. Prior to September 1994, Goldstein found little documentation regarding the diabetes, and further that the little documentation available did not indicate a severe case. Since that time, James developed, in Goldstein's opinion, progressive disease, coronary disease, and peripheral vascular disease. Goldstein could not opine as to whether James met the listing level of coronary disease prior to or on the September 1994 date, but he opined James did have a listing level by September 1995. Goldstein also found little documentation regarding the knee and hip injuries. Finally, Goldstein described the level of activity James was doing on or before September 1994, as "light," but could not be specific because of a lack of information.

Following Goldstein's testimony, the vocational expert, Richard Ruppert, testified as to James's past relevant work and potential for future employment. Regarding James's past work experience, Lewis characterized the positions as a maintenance repairer, salesman, and delivery driver, as medium to heavy and skilled, light and semi-skilled, and medium to heavy and semi-skilled, respectively. The ALJ presented Ruppert with a hypothetical of an individual with James's abilities, that specifically took into account seizure precautions, short term memory problems, and ability to stand and sit for six to eight hours, and work only two hours per day. Ruppert opined that the individual would not be able to perform any of James's past relevant work. However, Ruppert stated

there would be other work at the light level as a sorter, shipping and receiving weigher, and clerical checker, that James could perform. He opined these jobs are available in the thousands in the Harris County region. At the sedentary level, Ruppert suggested James could work as an order clerk, quotation clerk, and charge account clerk. According to Ruppert, these jobs are also available in the thousands in the Harris County region. Finally, Ruppert stated that James could not perform any job if his wife's testimony, that James could not work five to 10 times per month, was accurate.

The ALJ issued her decision denying benefits on August 17, 2000. The Appeals Council subsequently declined to reverse the original conclusion in an order dated February 13, 2004, taking into account additional evidence James provided the Council. James then timely sought judicial review in this Court of the denial of his original application. The Commissioner and James filed their motions for summary judgment on January 3, 2005, and January 31, 2005, respectively.

### Standard of Review and Applicable Law

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: 1) whether substantial record evidence supports the decision; and 2) whether proper legal standards were used to evaluate the evidence. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *McQueen v. Apfel*, 168 F.3d 152, 157 n.2 (5th Cir. 1999)).

The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Carey*, 230 F.3d at 135. In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's

judgment for the Commissioner's judgment. *Brown*, 192 F.3d at 496. Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

To claim entitlement to disability benefits, a claimant must show that he was disabled on or before the last day of his insured status. *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979). The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantially gainful activity," the regulations provide that the Commissioner should evaluate disability claims according to the following sequential five-step process:

(1) a claimant who is working, engaging in a substantially gainful activity, will not be found to be disabled no matter what the medical findings are;

(2) a claimant will not be found to be disabled unless he has a "severe impairment;"

(3) a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors;

(4) a claimant who is capable of performing work he has done in the past must be found "not disabled;" and

(5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity [("RFC")] must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that she is unable to engage in substantial gainful activity within the meaning of the Act. *See Wren v. Sullivan*, 925 F.2d 123, 125

(5th Cir. 1991) (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)). By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth. *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). The analysis stops at any point in the five step process upon a finding that the claimant is or is not disabled. *See Greenspan*, 38 F.3d at 236.

## Discussion

In this case, the ALJ found that James had engaged in substantial gainful activity in 1990, but not for the rest of the period under adjudication. From the alleged onset date of January 1, 1989 to September 1994, the ALJ found James suffered from coronary artery disease, WPW syndrome, and diabetes mellitus, but that they did not meet or equal in severity the medical listings in Appendix 1 of the Regulations No. 4. At step four, the ALJ found that James had the residual functional capacity ("RFC") to lift and carry 10–20 pounds, sit and stand for eight hours of a workday, and sit and stand at will, but was restricted from performing commercial driving or potentially dangerous work. The federal regulations provide that a claimant's RFC is the measurement of his greatest capability to do work despite any limitations. *See* 20 C.F.R. §§ 404.1545, 416.945. After determining James's RFC, the ALJ concluded that James could perform light work, as a sorter, shipping and receiving weigher, and clerical checker. Thereafter, the ALJ determined, based in part on the VE's testimony, that there were approximately 9,000 jobs in the Harris County regional economy that James could perform.

James requests judicial review of the ALJ's decision to deny benefits. James contends that the ALJ's decision is based on insufficient evidence. First, James argues that the ALJ improperly interpreted Goldstein's testimony, and that Goldstein actually testified that James met listing 4.05, for recurrent arrhythmias. Second, James asserts that the ALJ failed to develop the evidentiary record,

and in doing so, failed to consider all of James's alleged ailments when asking his hypothetical of the vocational expert. Finally, James submits additional evidence to support his claim in the form of a psychiatric evaluation. The Court concludes that the ALJ did not err in interpreting Goldstein's testimony, the ALJ sufficiently developed the record, the ALJ's decision was supported by substantial evidence in the record, and the additional evidence is not material to the case.

The ALJ did not err interpreting Goldstein's testimony. James claims Goldstein actually testified James met the 4.05 listing for recurrent arrhythmias. In support of this position, James cites part of the testimony from Goldstein:

> ALJ: All right. So what we have, we've looked at listing 4.05 and I think what you've said it's met or equaled on or before the 9/30/94 date?
>
> Goldstein: That's correct. (Tr. 436-37).

Although the portion of the record is accurately cited by James, the Court concludes that it does not accurately reflect Goldstein's testimony. The greatest part of Goldstein's testimony addressing this listing (Tr. 435), as well as medical evidence from the record, indicate unequivocally that Goldstein did not feel that James's met the 4.05 listing for the relevant period. In fact, Goldstein clearly states during his main testimony about listing 4.05 that James did not meet a listing for recurrent arrhythmia, and gave his reasons for that conclusion

> Goldstein: I would look under 4.05, under recurrent arrhythmias . . . . What I see in the record is, during the relevant period, that period prior to '94, is that he has had some palpitations. But I did not see documented recurrent syncopes. So because of that I would say during that period of time he did not meet a listing for the, for that, for that listing. (Tr. 435).

This earlier testimony by Goldstein, including his opinion that James did not meet the listing requirements, is further supported by the evidence. Although the listing states the patient must have recurring syncopes, James' medical records only reflect one in 1989, and none thereafter until 1995,

7

which is after the relevant period. As such, the Court finds that the remainder of Goldstein's testimony and the evidence submitted supports the ALJ's conclusion that no listing for arrhythmias was met.

The Court further concludes that the ALJ did not fail to develop the record. Although James bears the burden of demonstrating his disability, the ALJ has a duty to develop the record fully and fairly to ensure that substantial evidence supports his decision. *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *see also* 20 C.F.R. §§ 416.927(c)(3), 404.1527(c)(3). When the ALJ fails to perform that duty, he does not have sufficient facts to make an informed decision. This duty to develop the record applies even if the claimant is represented by counsel. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). This Court will reverse the decision of the ALJ on the basis of want of substantial evidence if the claimant can show (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced as a result. *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). An ALJ may satisfy his duty to develop the record through questioning the claimant about his medical condition, asking about his ability to perform daily activities, inquiring into the effectiveness of attempted treatments, considering medical reports of treating physicians, and inviting the claimant to add evidence to the record. *See, e.g., Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *James v. Bowen*, 793 F.2d 702, 704-05 (5th Cir. 1986).

James argues that the ALJ erred when he relied upon the expert testimony of Ruppert because the record contained insufficient information to form the basis for Ruppert's opinions. James alleges on appeal an extraordinary list of ailments, and asserts that a "significant number of them" existed on or before September 1994. Some of the most serious ailments, such as cardiac ablation, four-way bypass, three heart attacks, and peripheral vascular disease, however, are documented after the relevant period. In evaluating the evidence, the ALJ described the listing for heart disease, and

8

specifically described why the claimant does not fall within the criteria of the relevant listing. Although there are limited records from the relevant time period, the existing ones show that in 1989, after seven minutes of exercise, James did not reach targeted heart rate, and had no complaints of chest pain. The records also indicate that James had close to normal measurements of the ejection fraction, and further that there were no subjective complaints of chest pain from 1994 to 1995 when James had an angioplasty. Finally, in August 1995, James reported he had been asymptomatic for angina since his last angioplasty in 1989. In the face of medical records from several providers covering the relevant period of James's claimed disability, as well as James's own description of his daily activities on his social security application, this Court cannot conclude that the ALJ failed to fully develop the record.

The Court further disagrees with James's assertion that the ALJ's decision was unsupported by substantial evidence from the record. The ALJ allowed extra time to obtain as many records as available and invited testimony from James's wife, but the records of the relevant periods simply do not reflect any mention of ailments other than coronary artery disease, diabetes, and WPW. Despite explicitly stating that he did not find James's subjective complaints fully credible, the ALJ considered in his decision alleged limitations described by James, such as memory loss, and documented current medical problems, such as peripheral vascular disease. These limitations were also considered by Ruppert in the ALJ's hypothetical. As such, this Court finds that the ALJ's conclusion was based upon substantial evidence contained in the record.

Finally, James argues he has new evidence material to his claim showing James's depression. In order to warrant a remand on the basis of new evidence, the offered evidence needs to be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence at the prior proceeding. 42 U.S.C. § 405(g); *see Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987). In

addition, the evidence may not concern evidence of a later-acquired disability or subsequent deterioration of a previously non-disabling condition. *Bradley*, 809 F.2d at 1058. James concedes in his reply brief that "the mental impairment issue is not germaine at this point in time." However, even if the Court were to consider the argument, the Court concludes a remand to incorporate this psychiatric evaluation is not appropriate in this case.

In this case, the earlier references to depression, to which the new evidence could be linked, do not go back to the relevant time period. James attaches a psychiatric evaluation executed June 6, 2004, by Dr. Jaime Ganc, who certifies that James has major depressive disorder with psychotic features, and recommends psychiatric treatment. Ganc only saw James on one occasion, and Ganc's decision is based largely on subjective information, as told to him by James and his wife. Moreover, the Court cannot conclude that good cause existed for James's failure to incorporate this examination into evidence before the ALJ rendered her decision. The ALJ scheduled a second hearing to allow for more discovery, and also provided several extensions to the complainant after the hearing before making her decision. Accordingly, James's new evidence is not material, and the decision of the Commissioner must be affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment is GRANTED, and James's motion is DENIED. The Court shall enter a final judgment on even date herewith.

Signed this 16th day of August, 2005.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE